## THE OLYMPIC.

## THE O. L. HALLENBECK.

### (District Court, S. D. New York. November 4, 1914.)

COLLISION ☞71—TUG ENGAGED IN DOCKING STEAMSHIP—INJURY BY PROPELLER.

Libelant's tug, engaged with a number of others in docking a large steamship at New York, had taken position on the starboard quarter of the ship and called for a line, which had been thrown when the steamship started her starboard propeller, causing a suction, which drew the tug around against the blades and she was badly injured. *Held* that, as in accordance with the custom of the port her master selected her position, he assumed the risk of injury from the steamship's propeller, and should have guarded against it, and could not hold the steamship responsible for starting her propeller at any time necessary in aiding the work of the tugs.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ☞71.]

In Admiralty. Suit for collision by Peter Cahill, owner of the tug O. L. Hallenbeck, against the steamship Olympic, Oceanic Steam Navigation Company, Limited, claimant, and cross-libel against the tug. Decree for claimant, and cross-libel dismissed.

Carpenter & Park, of New York City, for libelant.
Burlingham, Montgomery & Beecher, of New York City, for claimant.

HAZEL, District Judge. On June 21, 1911, the steam tug O. L. Hallenbeck, while engaged in assisting the steamship Olympic into her berth alongside of Pier No. 59 in the Hudson river, sustained damage

by reason of the asserted negligence of the steamship, in consequence of which she collided with the propeller wheel of the steamship. At the time of the accident the Olympic was the largest steamer afloat, having a gross tonnage of 45,324; she was 882 feet long, and bound from Southampton to New York on her first voyage. When she arrived at her dock, ebb tide was running at the rate of from 10 to 15 miles an hour, while the wind was blowing slightly from the northwest. In docking, she required the assistance of 12 steam tugs on her port quarter to enable making her fast, bow first, on the northern side of the pier. The steam tug Hallenbeck took a position underneath the starboard quarter of the steamer at an angle of about 45°, something more than 150 feet forward of the stern of the Olympic; her purpose being to shove the latter over towards the dock. The tugboat was working ahead in this position, when at the request of her master a heaving line was thrown her from the steamer, which the deck hands immediately proceeded to fasten to a hawser, so that it could be drawn aboard the steamer, to make the tug fast to the steamer while she was engaged in pushing ahead on the starboard quarter. At this time the starboard wheel of the Olympic was motionless, but the proofs are that, before the deck hands of the tug had wound the heaving line around her bitt, the starboard propeller was suddenly reversed without notice to the tug, and the suction or swirl of the water was of such power and force as to slue the stern of the Hallenbeck to the rapidly revolving wheel of the steamer, where she struck. It is shown that the master of the Hallenbeck endeavored to break the sheer by quickly ordering the engines of the tug ahead full speed, while, as he testifies, the wheel was put hard to starboard; but his efforts to avoid the collision were futile, and the stern frame, rudder, and wheel shaft of the tug were cut off by the impact, and she would have sunk, had her after bulkhead not protected her.

The claim of the libelant is that the steamship was negligent in starting her starboard propeller after throwing the line to the tug, and in failing to stop it more quickly after she had started it; but I am of the opinion that the evidence in support of this claim is insufficient to prove fault on the part of the steamship in this respect. Both counsel for libelant and for respondent place reliance in the principle enunciated by Judge Wallace, writing for the Circuit Court of Appeals for this circuit in The City of New York, 54 Fed. 181, wherein the learned court substantially held that a tugboat assumes the risk of being sucked in by the propeller of a steamer if she goes too near it. The libelant urges that there was no arrangement or understanding between the two vessels by which the tugboat was expected to take a particular position or begin active services at a particular time, while in the case at bar the throwing of the heaving line to the Hallenbeck implied an agreement that the propellers would not be moved until the hawser was made fast. With this view I do not agree. I do not think that the mere act of heaving a line to the tugboat at the request of her master established an agreement or understanding by which the Olympic was bound not to move her propellers while she was being maneuvered into her berth, without first notifying the tug.

The position of the tugboat on the starboard quarter was selected by her master, and in performing the services to the steamer he should have exercised care and foresight, so that, if anything happened to sheer the tug, he would be able to overcome the sheer and control her movements. Although the propellers of the Olympic were more powerful, and their suction no doubt of greater force, than those of smaller steamers, still the master of the tugboat was aware of her great length and the increased size of her propellers, and he should not have been surprised at the increased current they produced when in motion. He was also aware that, in docking, steamers maneuvered, using their propellers at intervals, to assist the tugs aiding in the mooring operation. He had no right, therefore, to assume that the steamer would not continue or resume maneuvering during the time the tug was receiving the heaving line, and her crew directing their efforts towards making fast to the stern post.

On the port side of the steamship tugs were hauling in the slip close to the dock, and this should have been sufficient notice that at any moment the steamship might be required to conform to the movements of these tugs, and it ought not to have been supposed by the master of the Hallenbeck that the steamship would not use her starboard propeller until he was ready to have her do so. In the proper discharge of his duties, I think he should have realized that it was quite probable that the steamer would render assistance to the tugs with her propellers, and should have governed himself accordingly, either by keeping the tug under control or taking a position farther from the stern. It will not avail him to assert that he was unaware of the force and power of the suction or current produced by the propeller of the Olympic—a propeller larger than he had ever seen before—or that the steamer should have waited until the hawser was drawn aboard her, or that he should have been admonished to take a position farther from the stern of the steamer. It is customary in this port for masters of tugs to select their positions in rendering assistance to steamers, and in doing so they are required to have regard for their own safety. In my opinion the Hallenbeck sustained injury from the swirl of water caused by the motion of the starboard propellers of the steamer Olympic, because she was too close to the stern of the steamer and did not maneuver properly to arrest her sheer to port. The libel is dismissed.

I do not understand that it is claimed that the tug should be condemned for the damage to the propeller blades; but, if such claim were asserted, I should have no hesitation in finding that the steamer acquiesced and abetted the tug in the position taken by her on the starboard quarter of the steamer, and hence the cross-libel is also dismissed.

No costs to either party.